**KANTROWITZ, GOLDHAMER & GRAIFMAN**
**GARY S. GRAIFMAN (GSG - 2276)**
210 Summit Avenue
Montvale, New Jersey 07645
Telephone (201) 391-7000

**GREEN & PAGANO, LLP**
**MICHAEL S. GREEN, ESQ. (MSG - 2204)**
86 Washington Avenue
Milltown, New Jersey 08850
Tel: (732) 390-0480

**LAW OFFICES OF ED HEYBURN**
**ED HEYBURN, ESQ.  (ED - 8077 )**
37 Robbinsville-Allentown Road
Robbinsville, New Jersey 08691
Tel: (609) 259-7600

**ATTORNEYS FOR PLAINTIFFS**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY (NEWARK DIVISION)**
_____

| | | |
|---|---|---|
| **SAMUEL G. JONES, MICHAEL CORSNER** | : | |
| **AND ANDREA HOAGLAND on behalf of** | : | |
| **themselves and all others similarly situated,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **Case No.  06-4937 (PGS)** |
| | : | |
| **v.** | : | |
| | : | **CIVIL ACTION** |
| | : | |
| **THE CHUBB INSTITUTE,** | : | **FIRST AMENDED** |
| **THE CHUBB CORPORATION,** | : | **CLASS ACTION COMPLAINT** |
| **CHUBB AMERICA SERVICE CORPORATION:** | | **AND DEMAND FOR** |
| **and HIGH-TECH INSTITUTE, INC.** | : | **JURY TRIAL** |
| | : | |
| **Defendants.** | : | |
| | : | **CLASS ACTION** |

_____:

Plaintiffs, by their attorneys, on behalf of themselves and on behalf of all others similarly

situated allege as to the defendants The Chubb Institute, The Chubb Corporation, Chubb America Service Corporation and High-Tech Institute, Inc. (hereinafter "Chubb" or the "Defendants") as follows:

## NATURE OF THE CASE

1.      This is a class action pursuant to F.R.C.P. 23, on behalf of all persons who obtained federal loans to attend Chubb Institute, a technical career training institute, and were not placed in employment by Chubb in a job related to their academic program while attending Chubb.

2.      This is an action to secure compensatory, statutory and punitive damages, preliminary and permanent injunctive relief.  The claims asserted herein are premised on deceptive, unlawful and unfair business practices, unconscionable commercial practices, misrepresentations and fraud in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. and other claims set forth herein.

3.      It is alleged that as a result of Chubb's misrepresentations regarding, including but not limited to, their job placement numbers, eligibility requirements and career services during their admissions process class members were damaged, lost monies, by obtaining federal loans for Chubb's tuition and related expenses when they were not subsequently placed in employment relating to their Chubb academic program.

## JURISDICTION AND VENUE

4.      Jurisdiction is based upon diversity of citizenship pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(c) as Plaintiffs believe this is a class action in which the matter in controversy exceeds $5,000,000 and at least one of the named Plaintiffs is a citizen of a state different from the Defendants.

5.    Venue is proper in this district pursuant to 28 U.S.C. §1391, because Defendants either maintain an active place of business, including retail outlets, within this district, or provided services to Plaintiffs and Class members located in this district, and conducted substantial business in this district.  Moreover, at least one of the Plaintiffs resides in the district where he has been subjected to the alleged wrongs complained of.  Chubb's nationwide headquarters and principal place of business are in this district.

## PARTIES

6.    Plaintiffs are Samuel G. Jones, Michael Corsner and Andrea Hoagland.

7.    The plaintiff, Samuel G. Jones resides at 191 Seaman Street, New Brunswick, New Jersey 08901.  The plaintiff Michael Corsner resides at 820 Hidden Forest Court, Fairless Hills, PA 19067.  The plaintiff Andrea Hoagland resides at 1 Netherwood Avenue, Piscataway, New Jersey 08854.

8.    Plaintiff Samuel G. Jones attended Chubb from November 2003-September 2004 in the .Net Programming computer program.  Mr. Jones was never sent out by Career Services for even an entry level job placement.  Mr. Jones total tuition charge was $17, 388.00.  He obtained loans through the federal government to pay for the tuition.  As he was never placed in a job by Chubb, Mr. Jones was behind on his loan as soon as he graduated.

9.    Plaintiff Michael Corsner attended Chubb in 2004 for Multi-Media Design program.  Mr. Corsner was never offered an interview for a position by Career Services for a position that was not more than two hours away from where he lived.   He was never placed in a position by Career Services.  Mr. Corsner obtained federal loans through the federal government to pay for his tuition that were in excess of $17, 000.00.  He was told during the admissions process with Chubb that 90%

3

of their students are placed in jobs.

10.     Plaintiff Andrea Hoagland attended Chubb from February 2, 2004 to November 16, 2004 for the Medical Administration program of study.  She obtained federal grants of $4, 900.00 and federal loans of $5, 185.00 to pay for Chubb tuition.  She was a graduate of Highland Park High School.  She was never even sent out for an interview or on a job placement by Chubb's Career Services and never was placed by Chubb in a job placement or externship related to Medical Administration.  She was told during the admissions process with Chubb that 90% of their students are placed in jobs. She had to ask for an economic deferrment for the loans after finishing at Chubb. Her federal loans due now total $6, 551.28.

11.     Specifically, Chubb's employees  misrepresented to Plaintiffs Samuel Jones, Michael Corsner and Andrea Hoagland to induce them to enroll at Chubb that 90% of their students are placed in jobs related to their program of study at Chubb and that Chubb's Career Services would assist them in finding a job placement after they completed their training at Chubb.   The Plaintiffs were induced by Chubb's unconscionable commercial practices, deception, fraud, false promise, false pretenses and/or misrepresentations in its interaction with them and Class Members in violation of the New Jersey Consumer Fraud Act ("CFA").  As a result of Chubb's unconscionable commercial practices and misrepresentations Plaintiffs Samuel Jones, Michael Corsner and Andrea Hoagland and Class Members suffered an ascertainable loss in the amount of their federal loan monies that they were induced to take out to pay for Chubb's tuition and expenses.  Mr. Jones  suffered an ascertainable loss caused by Chubb's violation of the CFA in the amount of $17, 388.00.  Mr. Corsner suffered an ascertainable loss caused by Chubb's violation of the CFA in excess of $17, 000.00.  Mrs. Hoagland suffered an ascertainable loss caused by Chubb's violation of the CFA in the

amount of $6551.28.

12.     Defendants The Chubb Institute, The Chubb Corporation and Chubb America Service Corporation (hereinafter collectively, "Chubb Institute" or "Chubb") is a technical career training institute. Chubb America Service Corporation's principal place of business is at 8 Sylvan Way, Parsippany, New Jersey 07054.   The Chubb Institute was a subsidiary of The Chubb Corporation, an insurance company and New Jersey corporation, with its principal place of business at 15 Mountain View Road, Warren New Jersey.  The Chubb Institute was sold by The Chubb Corporation to defendant High-Tech Institute, Inc. in and around September of 2004.  The Chubb Institute's website is www.chubbinstitute.com.

13.     Defendant High-Tech Institute, Inc. (hereinafter "HTI") is a family of schools offering Associate's and Bachelor's degrees and technical training.  HTI purchased The Chubb Institute in and around January 2004.  HTI's principal place of business is 1515 E. Indian School Road, Phoenix, Arizona 85014.  Its website is www.hightechinstitute.com.

14.     It is alleged herein that the defendants since in and around November 2001, on a nationwide basis, violated the New Jersey Consumer Fraud Act by misrepresenting its job placement numbers, eligibility requirements and career services during the admissions process to plaintiffs and class members who attended Chubb and were not subsequently placed in jobs by Chubb Career Services in positions related to their academic program at Chubb.  Plaintiffs and Class Members are damaged in the amount of federal student loans they obtained to pay for Chubb tuition and expenses.

## CLASS ACTION ALLEGATIONS

15.     This action is brought and may properly proceed as a class action, pursuant to the provisions of F.R.C.P. 23. Plaintiff brings this action on behalf of himself and all others similarly

situated.  The Class is defined as follows:

> All persons residing in the United States of America who
> enrolled at Chubb, obtained federal loans to pay for their
> tuition and related expenses and did not obtain job placement
> in a position related to their academic program at Chubb.
> Specifically excluded from this class are any person who is an
> officer, director, employee, affiliate, subsidiary, legal representative
> heir, successor and their assignees of any such person, together
> with immediate family member of any officer, director or employee
> of said companies (the "Class").

16.     This action is properly maintainable as a class action.  The class for whose benefit

this action is brought is so numerous and geographically dispersed that joinder of all members is

impracticable, and the disposition of their claims in a class action will provide substantial benefits to

both the parties and the Court.  The numerosity requirement of F.R.C.P. 23 (a)(1) is therefore

satisfied.

17.     A class action is superior to other methods for the fair and efficient adjudication of

the claims herein asserted, and no unusual difficulties are likely to be encountered in the management

of this class action.  Since the damages suffered by individual class members may be relatively small,

the expense and burden of individual litigation makes it impossible for members of the Class to

individually seek redress for the wrongful conduct alleged.

18.     Rule 23(a)(2) and Rule 23(b)(3) are both satisfied because there questions of law and

fact which are common to the Class and which predominate over questions affecting any individual

class member.  The common questions include, inter alia, the following:

a.      Whether Chubb violated the New Jersey Consumer Fraud Act by fraudulently

and deceptively misleading prospective students during the admission process about Chubb's

graduates job placement percentages, eligibility requirements and academic programs with the intent

6

to fraudulently obtain student tuition monies through federal student loan program.

      b.     Whether students that were not qualified for admission to The Chubb Institute were admitted to Chubb and assisted by Chubb in obtaining federal loans and grants;

      c.     Whether students were admitted to The Chubb Institute and fraudulently allowed to complete training curriculum despite the fact that they were not competent to do so, enabling The Chubb Institute to keep all or the majority of the federal loan monies of the students;

      d.     Whether students that did not meet the federal government's eligibility requirements for application and qualification for federal loans were fraudulently assisted and supported in obtaining federal loans by Chubb;

      e.     Whether Chubb fraudulently misrepresented their job placement numbers to students when students sought admission to Chubb and misrepresented Chubb's ability to place students for specific curricula such as Medical Billing and Coding;

      f.     Whether Chubb fraudulently misrepresented their job placement numbers to prospective students and their accreditation agency ACCSCT (Accrediting Commission of Career Schools and Colleges of Technology), to increase their enrollment and so that Chubb's students could qualify for federal loans and grants.

      g.     Whether Chubb's admission and career service practices that included the deceptions and misrepresentations herein were unconscionable;

      h.     Whether Chubb's business practices constitute violations of the New Jersey Consumer Fraud Act, and, if so, the measure of damages and triple damages;

      i.     Whether Chubb's business practices proximately caused injury to plaintiffs and all others similarly situated and, if so, the proper measure of damages;

j.      Whether Chubb has been unjustly enriched by its practices as detailed herein;

k.      Whether Chubb's actions were sufficiently wrongful so as to entitle plaintiff and all others similarly situated to punitive damages; and,

l.      Whether the Class has been damaged and/or suffered irreparable harm and, if so, the extent of such damages and/or the nature of the equitable and injunctive relief which each member of the Class is entitled.

19.      Plaintiffs' claims and the claims of members of the Class all derive from a common nucleus of operative fact.

20.      In satisfaction of F.R.C.P. 23(a) and 23(a)(4), Plaintiffs are asserting claims that are typical of the claims of the entire Class, and Plaintiffs will fairly and adequately represent and protect the interests of the Class in that they have no interests that are antagonistic to those of the other members of the Class.  Plaintiffs anticipate no difficulty in the management of this litigation as a Class action.  Plaintiffs have retained counsel who are competent and experienced in the prosecution of class action litigation.

21.      Pursuant to F.R.C.P. 23(b)(1) and (b)(2), Defendants have acted or refused to act on grounds generally applicable to the Class making appropriate injunctive and/or declaratory relief with respect to the Class as a whole.

22.      Notice of pendency of this action can be given either by publication and/or over the Internet.

## FACTUAL ALLEGATIONS/INTRODUCTION

## I) FEDERAL STATUTES, REGULATIONS AND STANDARDS OF ACCREDITATION GOVERNING CHUBB'S PARTICIPATION  IN  TITLE IV/HEA PROGRAMS

.    23.    Upon information and belief, the overwhelming majority of Chubb's students apply for and receive federal Title IV/HEA program assistance to pay for Chubb's tuition and school related expenses.

24.    Title IV/HEA programs are governed by the Higher Education Act of 1965, 20 U.S.C. 1001 et seq. and its regulations and are loans and/or grants to assist in making available the benefits of postsecondary education to eligible students in institutions of higher education.  (See 20 U.S.C. 1070).

25.    Title IV/HEA program assistance federal loans and/or grants include Pell Grants, Perkins Loans, Federal Stafford, Federal PLUS, Direct Subsidized, Direct Unsubsidized, or Direct PLUS Loan disbursements.

26.    In order for Chubb's students to apply for and obtain Title IV/HEA program assistance, Chubb must be an eligible institution and be permitted to participate in the programs by the Secretary of Education. (20 U.S.C. 1070)

27.    To be an eligible institution and be permitted to participate in Title IV/HEA programs, Chubb must be an institution of higher education (20 U.S.C. 1001 (a) and (b), 20 U.S.C. 1002(a) and (b)) and Chubb must enter into a program participation agreement with the Secretary of Education. (See 20 U.S.C. 1094, Sec. 487 of Title IV, 34 CFR §668.14. Program Participation).

28.    Chubb, by entering into a program participation agreement with the Secretary of Education, agrees that it will comply with all statutory provisions of or applicable to Title IV of the HEA, and all applicable regulatory provisions prescribed under that statutory authority.  (See 34 CFR §668.14(b) (1)).

29.    Chubb, by entering into a program participation agreement, agreed to provide

9

accurate information to the nationally recognized accrediting agency that accredits the institution or any of the institution's branch campuses, other locations or educational programs.  (See 34 CFR §668.14 (b)(4), 34 CFR §602.1 et seq., Authority: 20 U.S.C. 1099b).

30.     The Accrediting Commission of Career Schools and Colleges of Technology (hereinafter ACCSCT) is recognized by the United States Department of Education as a private, non-profit, independent accrediting agency of postsecondary career schools and colleges.  (See 34 CFR §602.1 et seq., Authority: 20 U.S.C. 1099b).  By applying for and receiving accreditation, a school accepts the obligation to demonstrate compliance with the "Standards of Accreditation."  See ACCSCT Website - www.accsct.org.

31.     Pursuant to statutory authority, regulatory provisions and standards of accreditation applicable to Chubb as an institution of higher education participating in Title IV/HEA programs, Chubb is not permitted to make any misrepresentations regarding the nature of its educational program, its financial charges or the employability of its graduates. (See Subpart F - Misrepresentation, 34 CFR §668.71,  §668.72, §668.74, Authority: 20 U.S.C. 1094)

32.     Pursuant to statutory authority, regulatory provisions and standards of accreditation applicable  to Chubb as an institution of higher education participating in Title IV/HEA programs, Chubb has to provide a statement that certifies the eligibility of any student to receive a loan under Title IV/HEA.  (See 20 U.S.C. 1087d, Section 454(a)).

33.     Pursuant to statutory authority, regulatory provisions and standards of accreditation applicable to Chubb as an institution of higher education participating in Title IV/HEA programs, Chubb acts as a fiduciary in the administration of Title IV/HEA programs.  (34 CFR §668.82, Standard of Conduct.)

10

34.     Pursuant to statutory authority, regulatory provisions and standards of accreditation applicable to Chubb as an institution of higher education participating in Title IV/HEA programs, the Secretary of Education may impose a fine of up to **$27, 500 per violation** on a participating institution that (Emphasis added):

> (i) violates any statutory provision of or applicable to Title IV of the HEA, any regulatory provision prescribed under that statutory authority, or any applicable special arrangement, agreement, or limitation entered into under the authority of statutes applicable to Title IV of the HEA; or
>
> (ii) substantially misrepresents the nature of its educational program, financial charges or the employability of its graduates. (34 CFR §668.82. Fine Proceedings, Authority: 20 U.S.C. 1994)

35.     Pursuant to ACCSCT's published "Standards of Accreditation" (Revised February 15, 2006):

> a..     A school must be in compliance with all federal and state requirements. (Section I - Criteria for Eligibility, D. Legal and Disclosure Requirements)
>
> b.     The school's recruitment efforts must attract students who are qualified and likely to complete and benefit from the training provided by the school and not simply obtain enrollments. (Section IV - Student Recruitment, Statement of Purpose.)
>
> c.     A school shall ensure that its recruiters do not make false or misleading statements about the school, its personnel, its training, its services, or its accredited status. (Section IV - Student Recruitment, Statement of Purpose. A.4.)
>
> d.     A school may not make explicit or implicit promises of employment to prospective students.   (Section IV - Student Recruitment, Statement of Purpose. A.9.)
>
> e.     A school should only admit those students who are capable of successfully completing the training offered.  Admission decisions are based on fair, effective, and consistently applied criteria that enable the school to make an informed judgment as to an applicant's ability to achieve the program's objectives.  (Section V - Admission Policies and Practices. Statement of

11

Purpose.)

f.      The school must consistently and fairly apply its admission standards.  It must determine that applicants meets such standards and are capable of benefitting from the training offered.  (Section V - Admission Policies and Practices.  2. )

g.      Graduate employment assistance must be made available to students and the extent and nature of employment assistance services must be as claimed by the school.  <u>The school must maintain verifiable records of each graduate's initial employment for five years.  Any statement regarding the percentage of graduate employment, e.g. annual employment rates of graduates, must be based upon these verifiable records</u>.  (Section VI - Student Services. C. Graduate Employment Assistance and Records. 1 and 3.) (Emphasis added)

h.      A school must establish that a high proportion of its students attend class, successfully progress through and complete their program of study, and obtain employment in the field for which trained. A school must establish and consistently apply criteria which provide an objective evaluation of the student's progress toward attaining the program's specific educational objectives. (Section VII - Student Progress, Statement of Purpose).

i.      The school must terminate any student who is unable to satisfactorily achieve the knowledge and skills required by the occupation for which the training is intended.   Successful program completion is based upon satisfactory achievement of the required knowledge and skills.  (Section VII - Student Progress. B. Satisfactory Progress. 5. and 7.)

j.      A branch campus is a separate facility established by a main school that is geographically apart from the main school. The management and supervision oversight of the branch campus must be carried out by the same ownership and management that controls the main school.  (Section X - Separate Facilities. 1. Branch Campus)

k.      A main school is responsible and accountable to the Commission for its separate facilities.    (Section X - Separate Facilities. B. Branch Campus).

l.      Effective as of February 15, 2006, for all programs, the average rate of employment that demonstrates an acceptable student achievement is 83%. The minimum required employment rate is 70%. (Appendix II - Student Achievement Rates.  Required Employment Rate.)

## II)  CHUBB VIOLATED THE NEW JERSEY CONSUMER FRAUD ACT
## AND WAS UNJUSTLY ENRICHED

36.     Plaintiffs allege that Chubb violated the New Jersey CFA and were unjustly enriched

by:

(i)        causing the filing and presentation of Chubb students' claims for financial

aid from Title IV/HEA financial aid programs after <u>Chubb misrepresented</u> to them the nature of

Chubb's programs and externships, <u>the employability of its graduates and its employment placement</u>

<u>services and placement numbers.</u> (Emphasis added)  The students, in turn, relied on these substantial

misrepresentations to their detriment when deciding to enroll at Chubb and apply for Title IV/HEA

financial aid (See 34 CFR §668.71, Authority: 20 U.S.C. 1094).  Specifically, Chubb's employees

misrepresented to Plaintiffs Samuel Jones, Michael Corsner and Andrea Hoagland to induce them to

enroll at Chubb that 90% of their students are placed in jobs related to their program of study at

Chubb and that Chubb's Career Services would assist them in finding a job placement after they

completed their training at Chubb.     The Plaintiffs were induced by Chubb's unconscionable

commercial practices, deception, fraud, false promise, false pretenses and/or misrepresentations in

its interaction with them and Class Members in violation of the New Jersey Consumer Fraud Act

("CFA").   As a result of Chubb's unconscionable commercial practices and misrepresentations

Plaintiffs Samuel Jones, Michael Corsner and Andrea Hoagland and Class Members suffered an

ascertainable loss in the amount of their federal loan monies that they were induced to take out to pay

for Chubb's tuition and expenses.   Mr. Jones  suffered an ascertainable loss caused by Chubb's

violation of the CFA in the amount of $17, 388.00.  Mr. Corsner suffered an ascertainable loss caused

by Chubb's violation of the CFA in excess of $17, 000.00.  Mrs. Hoagland suffered an ascertainable

13

loss caused by Chubb's violation of the CFA in the amount of $6551.28.

(ii)     causing the filing and presentation of Chubb students' claims for financial aid from Title IV/HEA financial aid programs after Chubb misrepresented to the students whether they met Chubb's own admission criteria and/or whether the students could benefit from the education or training offered. (Emphasis added)   Chubb made these misrepresentations to the students, in violation of ACCSCT standards of accreditation, by: (1) changing admission test scores, some from failing grades to passing grades; and (2) admitting students that were not able to speak and write English fluently as required by Chubb's own admission criteria.  The students, in turn, relied on these substantial misrepresentations to their detriment when deciding to enroll at Chubb and apply for Title IV/HEA financial aid (See 34 CFR §668.71, Authority: 20 U.S.C. 1094).

(iii)     causing the filing and presentation of Chubb students' claims for financial aid from Title IV/HEA financial aid programs of students that were ineligible to receive Title IV/HEA program funds.  The students were ineligible, including but not limited to, because they "did not make satisfactory academic progress toward completing their program of study" in violation of 20 U.S.C. 1091 (c), 34 CFR §668.32 (f) and ACCSCT standards of accreditation.  (Emphasis added) Plaintiffs allege that teachers and staff were pressured by Chubb to give higher grades to students that were not making satisfactory progress so that Chubb would obtain the Title IV/HEA program funds. Chubb's management also made "professional judgments" admitting and allowing students that were ineligible for Title IV/HEA program assistance to apply for Title IV/HEA programs even though they were illegal non-citizens, did not have a valid social security number, did not comply with the U.S. Selective Service registration requirements and/or did not have a high school diploma or G.E.D. Chubb must provide a statement that certifies the eligibility of any student to receive a loan pursuant

to, but not limited to, 20 U.S.C. 1087d and Title IV/HEA Sec. 454(a)(1)(C).

(iv)    Chubb was, as a result of its misrepresentations and fraud, unjustly enriched and violated the New Jersey CFA when it received monies from Title IV/HEA federal loan programs.

### III) CHUBB INSTITUTE - HISTORICAL BACKGROUND

37.    The Chubb Institute is a technical career training institute.  They have eight campuses in Illinois, New Jersey, New York, Pennsylvania and Virginia.  The are four school sites in New Jersey and two in New York.  The New Jersey schools are located in Cherry Hill, Jersey City, North Brunswick and Parsippany.  The New York schools are located in New York City and Westbury.

38.    The Chubb Institute has been open for 30 years.  On its own website regarding the beginning of the Chubb Institute it states, "In 1970, one of the largest insurance organizations in the world needed qualified people to run its multimillion dollar computer center.  Not able to find skilled employees, it created its own training center.  This proved so successful that companies like IBM, Johnson & Johnson and UPS soon asked The Chubb Institute to provide them with computer professionals.  And so The Chubb Institute was born."

39.    "In 2004, The Chubb Institute was acquired by High-Tech Institute (HTI), which added the Chubb Institute's eight locations to its list of 17 HTI campuses throughout the United States...  Since 1970, the Chubb Institute  has "trained more than 40, 000 in a wealth of fields that have led to promising careers."  Chubb Website.

40.    The Chubb Institute offers the following programs: Computer Networking & Security, Graphic Design & Animation, Massage Therapy, Medical Administration, Medical Assistant, Medical Billing & Coding and Surgical Technologist.

### IV)  CHUBB'S  REPRESENTATIONS ABOUT THEIR SCHOOL

## CAREER SERVICES

41.     Chubb states on their website that the Medical Assistant program and Medical Billing & Coding program both "conclude with an externship in a medical facility or medical office or hospital, where the student will practice the skills they learned in the classroom."

42.     The Chubb Institute represents that graduates work for a number of top corporations, including American Express Bank, Blue Cross/Blue Shield, State Farm Insurance, Health Management Systems and others.  (See Chubb website).

43.     Chubb states on their website in the "Top 10 Reasons to Enroll" that Chubb has:

"3) Fast, Convenient, Quality Training - Programs are designed to get you the sills you need to succeed in the shortest amount of time possible."

"5) Business Advisory Boards - The Chubb Institute partners with the local business community and seeks its input when developing our curricula.  The end result is training programs that are practical, job relevant and meet the needs of today's businesses.

"6) Career Services Assistance - The Chubb Institute's ultimate goal is to train its graduates for effective careers.  Our full-time career Services staff assists students in good standing in developing life-long job search skills."

"8) Financial Assistance for Those Who Qualify - We offer a variety of financing options as well as a trained, full-time staff to help you receive the aid for which you qualify."

44.     Chubb states on their website in addressing high school students that "Let one of our Admissions Representatives walk you through the entire application process and figure out how much

16

financial aid you qualify for.  We're here for you-before you enroll, when you're in school, and after you graduate."

45.     Chubb states on their website regarding "providing opportunities" that, "When you graduate from The Chubb Institute, you'll be a marketable professional who's qualified for a long-term career.  We know what today's employers are looking for, so we make sure your skills match their needs.  Successful, growing companies are all looking for people who are trained in the programs we teach.  People like you."

46.     Chubb states on their website regarding "Graduate Placement Assistance" that, "After you graduate, we'll do everything we can to help you find a position in your career field."

47.     Chubb states on their website regarding "The Admissions Process, best of all, an Admissions Representative will walk you through the entire process from start to finish.  We'll help you pick the program that's right for you, clearly explain everything you need to submit, and more. We'll even have a financial aid representatives sit down with you and discuss the amount and type of Federal Financial Aid that may be available to you.

## CHUBB'S FINANCIAL AID PROCESS REPRESENTATIONS

48.     Chubb states on their website regarding Financial Aid, "To help students achieve their financial goals, we make Financial Aid available to those who qualify.  Those that do can apply for loans, grants and scholarships!  Finding out if you qualify is easy because we've made the Financial Aid process at The Chubb Institute as simple as possible."

49.     Chubb states on their website as regards the "Financial Aid Process", "To help students achieve their financial goals, we make Financial Aid available to those who qualify.  If you do qualify, you can apply for loans, grants, scholarships and more!"  "Here's how the Financial Aid

process works: (1) Make sure you are eligible for Financial Aid, Generally speaking, you will be eligible for Financial Aid if you: - Are enrolled as a regular student in an eligible program. Make satisfactory academic progress toward completing your program of study. 2) Complete the Enrollment Agreement.  Before we can help you determine the Financial Aid you may qualify for, you must enter your Admissions Representative and enroll in the school. 3) Before meeting with a Financial Advisor, you'll be given a Financial Aid packet, which you should complete prior to this meeting.  This packet contains the Free Application for Federal Student Aid (FAFSA).  The federal government uses this to determine the amount of aid you will receive.    During this meeting, the Financial Aid Advisor will review your application for completeness and accuracy, and will then perform a calculation to estimate how much aid, if any, you are eligible to receive. (Emphasis added)

### CHUBB'S ADMISSION PROCESS

50.     Chubb states on their website as regards, "The Admissions Process", Here's how the Admissions process works:

1) "Make sure you meet our admission requirements: **You must be able to speak and write English fluently.  You must possess a minimum of a high school diploma or the equivalent and must provide proof of high school graduation."**  (Emphasis added)

2) "Complete an Application for Admissions and participate in an on-site campus tour and interview.  Interviews are conducted by an Admission Representative to review the candidate's education background, work experience, **financial plans** and career preferences. The Admissions Representative will also make sure the candidate's admissions requirements are met.

3) "Achieve a passing score on our Admissions Evaluation.  This evaluation, which requires

18

no preparation, helps the school measure a candidate's ability to perform in school and on the job. **Once you meet the admissions criteria and complete the admissions process, you are accepted and may begin to enroll in the school**." (Emphasis added)

51.     Chubb states on their website as regards, "Admissions Frequently Asked Questions": "What happens after I'm accepted?  Candidates who have met the admissions criteria and have completed the admissions process may be referred to the Executive Director or a designated school official for acceptance....Enrollment consists of signing an Enrollment Agreement and Payment Agreement (for non-financial aid applicants) and paying a registration fee....The exam results remain valid for one year from the test date....Students are responsible for any additional charges incurred for repeated courses..."

### CHUBB'S REPRESENTATIONS ABOUT ITS CURRICULUM

52.     In Chubb's website states on its "Mission Statement" in "Our Commitment to Our Students" that:

"Our goal is to provide the highest quality training that enables a person to start or enhance their career...At The Chubb Institute, we constantly meet with major employers and industry leaders to understand their job needs.  We then develop the curriculum that trains people in these needed skills to fulfill these job requests. The result is that The Chubb Institute's training is always practical and job relevant, resulting in a tremendous demand for our graduates."

53.     Chubb states on their website as regards the Chubb Institute Programs, "No matter which of our programs you choose, you'll complete your Diploma in a little more than one year, or less.  Get the training you need, then get the job you want."

19

54.     Chubb states on their website as regards their "Massage Therapy Diploma Program" under "What Does Our Massage Therapy Program Offer You?, that it offers a, "Supervised Clinic in a clinical setting."

55.     Chubb states on their website as regards their "Medical Assistant Diploma Program" under "What Does Our Medical Assistant Program Offer You?, that it offers, "An externship in a medical facility."

56.     Chubb states on their website as regards their "Medical Billing & Code Diploma Program" under "What Does Our Medical Billing & Coding Program Offer You?, that it offers an, "Externship in a medical office or a hospital."

57.     Chubb states on their website as regards their "Surgical Technologist Diploma Program" under "What Does Our Surgical Technologist Program Offer You?, that it offers, "An externship at a medical facility."

## V) CHUBB'S MISREPRESENTATIONS -  EMPLOYMENT PLACEMENT NUMBERS, ADMISSION CRITERIA AND THE ACADEMIC PROGRESS OF ITS STUDENTS

58.     As detailed below, since in and around November 2001, on a nationwide basis, Chubb made misrepresentations to prospective students, enrolled students, the Secretary of Education and its accrediting agency, the ACCSCT, that violated its participation agreement with the Secretary of Education that allowed it to receive Title IV/HEA monies.

## CHUBB MADE MISREPRESENTATIONS TO PROSPECTIVE STUDENTS ABOUT JOB PLACEMENT

59.     Plaintiffs allege that since in and around November 2001 on a nationwide basis, Chubb has misrepresented to prospective students placement numbers and the ability for Chubb's Career Services to make placements for students.

20

60.     Chubb misrepresented their job placement numbers to the accreditation agencies (ACCSCT - Accrediting Commission of Career Schools and Colleges of Technology) so that Chubb's students could qualify for federal loans and/or grants.

61.     The ACCSCT requires 70% job placement overall for Chubb.   During admission interviews , Admission Representatives would orally convey that the school's placement numbers were 85-90%.  However, these numbers were based on false placement data.

62.     An "Enrollment Agreement" includes a statement that is executed by the student that they were not guaranteed that Chubb would place them in a job.  However, Admission Representatives did in fact make oral guarantees that prospective students would be placed in a job by Chubb.

63.     A placement is employment gained through the efforts of career services staff of a student in a job where they would have had to come to the school to learn the skill to do the job. Students were counted as placed when they were in jobs unrelated to their curriculum.  Students placed in menial jobs, such as administrative tasks, were counted as being placed in jobs related to their curriculum e.g. computer programming, website design.

64.     This process often called "career pathing" artificially boosted Chubb's placement numbers and was a misrepresentation to students and a fraud upon the accreditation agencies and the government.

65.     Chubb also misrepresented to prospective students for Medical Billing and Coding and other curriculum that included externships that Chubb had a placement referral base for these curriculum and externships when in fact they did not or did not have an adequate placement referral base.

21

66.     Chubb misrepresented their employment placement numbers and the externships of their programs to increase enrollment numbers, fraudulently obtain accreditation and obtain Title IV/HEA funds for Chubb.

67.     Specifically, Chubb's employees  misrepresented to Plaintiffs Samuel Jones, Michael Corsner and Andrea Hoagland to induce them to enroll at Chubb that 90% of their students are placed in jobs related to their program of study at Chubb and that Chubb's Career Services would assist them in finding a job placement after they completed their training at Chubb.   The Plaintiffs were induced by Chubb's unconscionable commercial practices, deception, fraud, false promise, false pretenses and/or misrepresentations in its interaction with them and Class Members in violation of the New Jersey Consumer Fraud Act ("CFA").  As a result of Chubb's unconscionable commercial practices and misrepresentations Plaintiffs Samuel Jones, Michael Corsner and Andrea Hoagland and Class Members suffered an ascertainable loss in the amount of their federal loan monies that they were induced to take out to pay for Chubb's tuition and expenses.  Mr. Jones  suffered an ascertainable loss caused by Chubb's violation of the CFA in the amount of $17, 388.00.  Mr. Corsner suffered an ascertainable loss caused by Chubb's violation of the CFA in excess of $17, 000.00.  Mrs. Hoagland suffered an ascertainable loss caused by Chubb's violation of the CFA in the amount of $6551.28.

### CHUBB MADE MISREPRESENTATIONS TO PROSPECTIVE STUDENTS, THE ACCSCT AND THE DEPARTMENT OF EDUCATION ABOUT ITS ADMISSIONS CRITERIA

### Chubb Changed Admission Test Scores from Failing to Passing

68.     Chubb knowingly admitted unqualified students that did not achieve a passing score on Chubb's Entrance Assessment Test in violation of their own admission criteria and ACCSCT

22

standards.

69.     Plaintiffs allege that Chubb employees changed the admission test scores of unqualified students such that failing grades were changed to passing grades and/or low passing grades were made higher.  This process was known as applying "pixie dust" to the tests.

70.     Chubb admission personnel changed the tests to increase their enrollment numbers and obtain Title IV/HEA funds for Chubb.

71.     Chubb also changed the test scores as a marketing ploy to convince prospective students that they could succeed at Chubb and in the academic program of their choice.

**Chubb Admitted Unqualified Students That Could Not Speak or Write English Fluently**

72.     Chubb's own admission criteria require that enrolling students speak and write English fluently.

73.     Chubb admitted foreign and other students that could not speak or write English fluently by instituting an unconscionable commercial practice under which practice Chubb's management instructed its admission employees to admit students who could not read or write English fluently.

74.     Chubb admitted students that were accompanied by a relative who translated for them during the admissions process and clearly indicated that the student could not speak or write English fluently.

75.     Chubb admitted students that were not fluent in English to increase their enrollment numbers and obtain Title IV/HEA funds for Chubb even though there was virtually no prospect of the unqualified students obtaining a job.

**CHUBB MISREPRESENTED TO STUDENTS AND THE DEPARTMENT OF**

23

**EDUCATION THAT STUDENTS WERE MAKING SATISFACTORY ACADEMIC PROGRESS TOWARD COMPLETING THEIR PROGRAM OF STUDY**

76.     Pursuant to 20 U.S.C. 1091, 1094 and 34 CFR §668.32, Subpart C - Student Eligibility, in order for students to be eligible for Title IV/HEA programs their institution of higher education had to certify that they were making satisfactory academic progress toward completing their program of study.

77.     Chubb management instructed its employees to artificially raise the grades of Chubb students that had grades that would make them ineligible for Title IV/HEA programs, so that they would be eligible.

78.     Chubb's teachers were pressured by management to change the grade curving of classes such that more students would pass so that Chubb would have a higher retention rate and would be allowed under federal and state guidelines to receive more of the tuition monies paid by students.

79.     Chubb falsely certified that students were making satisfactory progress toward completing their program of study when they were not, so that the students would be eligible for Title IV/HEA programs.  Chubb must provide a statement that certifies the eligibility of any student to receive a loan pursuant to, but not limited to, 20 U.S.C. 1087d and Title IV/HEA Sec. 454(a)(1)(C). In this manner, Chubb caused the filing and presentation of false claims to the government and violated the False Claims Act.

**VI)  CHUBB KNOWINGLY CAUSED THE FILING OF FALSE CLAIMS FOR STUDENTS THAT WERE INELIGIBLE FOR TITLE IV/HEA ASSISTANCE**

80.     In order for students to be eligible for federal loans and/or grants, the federal government requires of the student (See also 20 U.S.C. 1091, 1094 and 34 CFR §668.32, Subpart

C - Student Eligibility), according to Chubb's own website, the following:

    a.     be a U.S. citizen or an eligible non-citizen
    b.     have a social security number
    c.     have a high school diploma or GED
    d.     have complied with U.S. Selective Service registration requirements
    e.     sign required certification forms
    f.     have never been convicted of a drug offense
    g.     **make satisfactory academic progress toward completing their program of study.**

81.     Chubb's Financial Aid Advisors put a financial aid package together for the student and submits it to the federal government.

82.     Prospective students that did not meet the eligibility requirements had their financial aid "package" sent to Chubb's national headquarters in Parsippany, New Jersey where a "professional judgment" was made and the local campus e.g. North Brunswick's financial advisor, was called and told to submit the financial aid forms to the federal government despite the fact that the students did not meet the eligibility requirements.

83.     Chubb's financial aid process allowed Chubb to obtain federal loan monies from students that would otherwise be ineligible to obtain those funds.

84.     Chubb must provide a statement that certifies the eligibility of any student to receive a loan pursuant to, but not limited to, 20 U.S.C. 1087d and Title IV/HEA Sec. 454(a)(1)(C).

85.     Chubb knowingly conspired to present false claims and use false records to obtain payments from federal loans and/or grants from the federal government.

## VII) CHUBB'S MISREPRESENTATIONS AND FRAUD CAUSED FALSE OR FRAUDULENT TITLE IV/HEA CLAIMS  TO BE MADE AND TUITION MONIES TO BE  PAID TO CHUBB

86.     Plaintiffs allege that since in and around November 2001, practices at The Chubb Institute as regards the admission, teaching and job placement of students knowingly caused

and supported a fraud upon the students admitted to Chubb and the U.S. Government.  Chubb

students, that were (1) not qualified to be admitted to Chubb; and/or (2 )not eligible for Title IV/HEA

program assistance; and/or (3) relied on misrepresentations when enrolling at Chubb which made

Chubb ineligible to receive Title IV/HEA monies, applied for and received Title IV/HEA program

monies with the fraudulent support and assistance of The Chubb Institute.  Chubb's

misrepresentations and fraud caused the filing of false claims and unjustly enriched Chubb with

monies loaned by the students.

87.     Specifically, the plaintiffs allege that since November 2001, on a nationwide basis:

a.      students that were not qualified for admission to The Chubb Institute were admitted
        to Chubb and assisted by Chubb in obtaining federal loans and grants;

b.      students were admitted to The Chubb Institute and fraudulently allowed to complete
        training curriculum despite the fact that they were not competent to do so, enabling
        The Chubb Institute to keep all or the majority of the federal loan monies of the
        students;

c.      students that did not meet the federal government's eligibility requirements for
        application and qualification for federal loans were fraudulently assisted and
        supported in obtaining federal loans by Chubb;

d.      Chubb fraudulently misrepresented their job placement numbers to students when
        students sought admission to Chubb and misrepresented Chubb's ability to place
        students for specific curricula such as Medical Billing and Coding;

e.      Chubb fraudulently misrepresented their job placement numbers to prospective
        students and their accreditation agency ACCSCT (Accrediting Commission of Career
        Schools and Colleges of Technology), to increase their enrollment and so that
        Chubb's students could qualify for federal loans and grants.

## **FIRST COUNT**
### **(Violations of the New Jersey Consumer Fraud Act - N.J.S.A. 56:8-1 et seq.)**

88.     The Plaintiffs hereby incorporate by reference each of the preceding allegations as

though fully set forth herein.

26

89.     Chubb engaged in unconscionable commercial practices, deception, fraud, false promise, false pretenses and/or misrepresentations and violated pertinent statutes including, but not limited to, the False Claims Act, 31 U.S.C. §3729 (a)(1), 31 U.S.C. §3729(a)(2), 31 U.S.C. §3729(a)(3) et seq., in its interaction with Plaintiffs and Class Members in violation of the CFA.

90.     Plaintiff and all members of the Class suffered an ascertainable loss when they were charged tuition by the defendant and made to apply for federal student loans, after false misrepresentations by the defendant during the admissions process, and Plaintiffs and Class Members were not placed in employment related to their academic program at Chubb by Chubb's Career Services.  By virtue thereof, Chubb's false representations, unconscionable business practices, false pretense, deception and violation of statutes including, but not limited to, the False Claims Act, 31 U.S.C. §3729 et seq., caused plaintiffs and class members to enroll in Chubb's programs and, as a result thereof, become obligated for loans (many of which have been paid back in part or in full by plaintiffs and class members), which loan proceeds were paid to Chubb by the U.S. Government on their behalf, though there was no prospect they would ever receive the employment promised.

91.     By virtue thereof, the Class is entitled to injunctive relief and a declaratory judgment setting aside the loans for tuition to Chubb, having Chubb pay off those loans  and other compensatory and statutory damages.

## SECOND COUNT
## UNJUST ENRICHMENT AND DISGORGEMENT

92.     The Plaintiffs hereby incorporate by reference each of the preceding allegations as though fully set forth herein.

93.     As a result of the conduct described in this Count, the Plaintiffs and Class Members

paid monies to defendant for which the Plaintiffs and Class Members received no benefit and to which defendant was not entitled.

94.     In consequence of the acts set forth in this Count, defendant has been unjustly enriched at the expense of the Plaintiffs and Class Members.

95.     The Plaintiffs and Class Members are entitled to the amount of defendant's unjust enrichment as restitution.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs, on behalf of themselves and the members of the class, demand judgment as follows:

(a)     A determination that this action is a proper class action maintainable under Federal Rules of Civil Procedure, Rule 23, and certifying an appropriate Class and/or Subclass and certifying Plaintiffs as Class and Subclass representatives;

(b)     Equitable and injunctive relief enjoining Chubb from pursuing the policies, acts and practices described in this Complaint; and

(c)     An order requiring disgorgement and/or imposing a constructive trust upon Chubb monies received from loan monies from Plaintiffs and Class Members, and requiring defendants to pay Plaintiffs and all members of the Class for any act or practice declared by this Court to be unlawful;

(d)     Damages in an amount to be determined at trial;

(e)     Statutory damages for violations of the applicable statutes and the Consumer Fraud Act pre-judgment and post-judgment interest at the maximum rate allowable at law;

(f)     Punitive damages in an amount to be determined at trial;

(g)      For a declaratory judgment declaring the loans to be unenforceable and set aside for

Chubb to pay;

(h)      The costs and disbursements incurred by Plaintiff in connection with this action,

including reasonable attorneys' fees and expert fees; and

(i)      Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.


Dated: January 8, 2007                          KANTROWITZ, GOLDHAMER & GRAIFMAN

                                     By      s/ **Gary S. Graifman**
                                          GARY S. GRAIFMAN, ESQ.
                                          210 Summit Avenue
                                          Montvale, New Jersey 07645
                                          Telephone (201) 391-7000

                                          GREEN & PAGANO, L.L.P.
                                          MICHAEL S. GREEN, ESQ.
                                          86 Washington Avenue
                                          Milltown, New Jersey 08850
                                          Tel: (732) 390-0480
                                          Fax: (732) 390-0481

                                          LAW OFFICES OF ED HEYBURN
                                          ED HEYBURN, ESQ.
                                          37 Robbinsville-Allentown Road
                                          Robbinsville, New Jersey 08691
                                          Tel: (609) 259-7600
                                          Fax:(609) 259-7303