UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

| | |
|---|---|
| SAMUEL G. JONES, et. Al., <br><br> Plaintiff, <br><br> v. <br><br> THE CHUBB INSTITUTE, et. al., <br><br> Defendant | Civ. Action No. 06-4937 (KSH) <br><br><br> **Opinion** |

**KATHARINE S. HAYDEN, U.S.D.J.**

### INTRODUCTION

Defendants The Chubb Institute ("TCI"), the Chubb Corporation, Chubb America Service Corporation, and High Tech Institute Inc. ("High-Tech") (collectively "defendants") bring a motion to compel arbitration and to stay the action brought by plaintiffs Samuel G. Jones, Michael Corsner and Andrea Hoagland (collectively "plaintiffs"). For the reasons set forth, the motion to compel arbitration is granted, and the motion to stay the action is also granted.

### BACKGROUND

Plaintiffs are three former students of TCI, a technical career training school with campuses in five states, including New Jersey. (Amend. Compl. ¶ 39.) All of the named plaintiffs here went to school in New Jersey. TCI offers programs in the areas of computer skills

1

and training, graphic design, medical billing and administration, and massage therapy.  (Amend. Compl. ¶ 40.)

Plaintiffs contend they, along with the class of individuals they wish to represent, were misled by TCI through unconscionable business practices and deception.  (Amend. Compl. ¶ 89.) Plaintiffs allege that TCI told the plaintiffs the school had a 90% placement rate for graduates. (Amend. Compl. ¶ 11.)  But plaintiffs contend that they were never sent for interviews or received a job through TCI.  (Amend. Compl. ¶¶ 8-10.)  As a result, the plaintiffs suffered damages in the amount of their student loans.  (Id.)  Jones amassed $17,388.00 in student loans, Corsner $17,000, and Hoagland $6,551.28.  In addition, plaintiffs allege that TCI markets its programs to "the undereducated, the poor, minorities, foreign students, poor English speakers and the unemployable."  (Opp. Br. 6.)

Plaintiffs filed suit against TCI, acquired by High-Tech in January 2004, for violating the New Jersey Consumer Fraud Act ("CFA") and for unjust enrichment and disgorgement. (Amend. Compl. ¶¶ 88-91, 92-95.)  The CFA provides for treble damages, attorneys fees, and other costs.  N.J.S.A. §§ 56:8-19.  Plaintiffs also ask the court to certify a class action under Fed. R. Civ. P. 23.  The class would consist of persons who were induced to enroll at TCI, obtained student loans to pay for their expenses, and failed to obtain any job relating to their field of study.  (Amend. Compl. ¶ 15.)

Each student signed an identical enrollment agreement ("agreement"), which included an arbitration agreement on page 3 of the application that TCI now seeks to enforce.  (Woolf Decl., Ex. A., at p. 3, ¶ 1.)  The agreement provided for arbitration of "any and all claims" including "any and all statutory claims."  (Id.)  Claims subject to arbitration include "the marketing of

2

[TCI], the admission process, the student's enrollment in [TCI], the curriculum, the student's participation in any curriculum, and/or placement." (Id.) The agreement also prohibits putative or certified class actions. (Id.) The agreement is governed by the laws of the state where the student is enrolled. (Woolf Decl., Ex. A., at p. 3, ¶ 2.) The parties are only entitled to compensatory damages; an arbiter cannot award treble damages or attorneys fees "unless expressly provided under applicable State or Federal Law." (Woolf Decl., Ex. A., at p. 3, ¶ 8.) On page 4 of the agreement is a disclaimer right above the signature line in all capital letters that reminds the student "THE AGREEMENT REQUIRES BINDING ARBITRATION OF DISPUTES," and "YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THOSE MATTERS LITIGATED IN A COURT OR JURY TRIAL." (Woolf Decl., Ex. A., at p. 4.) Plaintiffs argue that their claims are not covered under the agreement, the agreement is unenforceable, and even if it is enforceable, the class action waiver provision should be set aside.

## JURISDICTION AND STANDARD

Jurisdiction is based on the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). A district court has jurisdiction over a class action if (1) the amount of controversy exceeds $5,000,000, and (2) "any member of the class of plaintiffs is a citizen of a State different from any defendant." Id. Here, plaintiffs allege the aggregate amount of the plaintiffs' claims, as an entire class, will exceed $5,000,000. (Compl. ¶ 4.) Plaintiff Corsner is a citizen of Pennsylvania and TCI is a New Jersey corporation. For purposes of this opinion, the Court finds jurisdiction is satisfied.

A motion to compel arbitration requires the court to determine (1) "whether a valid agreement to arbitrate exists," and (2) "whether the particular dispute falls within the scope of that agreement." Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005).

## DISCUSSION

### A. The arbitration agreement is valid.

"Any inquiry into the scope of an arbitration clause must necessarily begin with the presumption that arbitration applies." In re Prudential Ins. Co. of Am. Sales Practice Litig., 133 F.3d 225, 231 (3d Cir. 1998).  The parties agree that the Federal Arbitration Act applies to determine the validity and enforceability of the arbitration agreement. 9 U.S.C. § 2 (2000). That section provides that any written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Id.  Whether an arbitration agreement is enforceable is based upon state law principles that apply generally to contracts. Delta Funding Corp. v. Harris, 189 N.J. 28, 39 (2006).  While New Jersey public policy favors arbitration, contract defenses such as unconscionability can justify a court's refusal to enforce the agreement.  Id.

Plaintiffs claim that the arbitration section of the agreement is unconscionable and should not be enforced.  The parties do not dispute New Jersey law is applicable here.  The issue then is whether New Jersey's law on unconscionability will prohibit judicial enforcement of the agreement.

A court can refuse to enforce a contract that is unconscionable.  Muhammad v. County Bank of Rehoboth Beach, Delaware, 189 N.J. 1, 15 (2006).  An inquiry into unconscionability requires findings on two different factors. Sitogum Holdings, Inc. v. Ropes, 352 N.J. Super. 555,

564 (Ch. Div. 2002). The court looks for signs of procedural unconscionability by examining the age, literacy, and sophistication of the signing party, as well as hidden terms in the agreement and the setting for contract negotiations. Id. The court will also examine the agreement for substantive unconscionability, where an agreement is "so one-sided as to shock the court's conscience." Id. When examining contracts of adhesion, this inquiry is guided by the principles set forth in Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344 (1991), cert. denied, 506 U.S. 871 (1992). The court should examine the subject matter of the agreement, the bargaining positions of the parties, the take-it-or-leave-it nature of the agreement, the degree of economic coercion motivating the party to be bound, and any public policy concerns. Muhammad, 189 N.J. at 15-16. Contracts of adhesion will have some signs of unconscionability, but are not illegal per se. See id. This Court examines the relevant facts and circumstances to determine the potential unconscionability of the agreement.

The Court finds that plaintiffs have not demonstrated either procedural or substantive unconscionability. Plaintiffs argue that the terms of the arbitration agreement were hidden, in smaller type, and were "unduly complex." (Opp. Br. 22.) In procedural terms, the Court notes that while the terms of the arbitration agreement are slightly smaller than the rest of the agreement, the terms are readable and the disclaimer is in bold type. (Woolf Dec., Ex. A, p. 3-4.) The arbitration section also takes up one full page of the four page agreement. (Id.) The agreement is for educational training. All plaintiffs were at least high school graduates, and similar arbitration agreements have been enforced against less sophisticated plaintiffs by both the New Jersey Supreme Court and the Third Circuit. See, e.g., Delta Funding Corp., 189 N.J. at 35 (upholding enforcement of an arbitration clause in a contract of adhesion against an elderly woman with a 6th grade education); Salley v. Option One Mortg. Corp., 2007 U.S. App. LEXIS

5

18865, *3 (3d Cir. 2007) (upholding enforcement of arbitration clause in mortgage loan against a low-income homeowner).  The plaintiffs were in a position to bargain for their education because they had other higher education options they could have pursued.

Substantively, the public interest is not affected by the contract because the plaintiffs can still vindicate all their rights through arbitration.  Plaintiffs incorrectly argue that the CFA would not apply in arbitration.  N.J.S.A. §§ 56:8-1 to -135.  Defendants concede the agreement "clearly and unequivocally permit[s] the Plaintiffs to pursue any and all statutory remedies under the CFA, including treble damages and attorneys fees."  (Reply Br. 8.)  Defendants do not dispute that New Jersey law would apply in the arbitration proceedings because all the plaintiffs went to school in New Jersey, and "the law of the State in which the student is enrolled is located" governs the agreement.  (Woolf Dec., Ex. A. p. 3, ¶ 2.)  "[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral rather than a judicial, [sic] forum."  Martindale v. Sandvik, Inc., 173 N.J. 76, 93 (2002).  Thus, plaintiffs would be entitled to any substantive rights afforded by CFA, including treble damages and attorneys fees.  Since plaintiffs would be entitled to the same substantive rights they would have through the courts, the Court finds that the arbitration agreement is enforceable because it is neither procedurally nor substantively unconscionable.

**B. The class arbitration clause is valid.**

Plaintiffs also argue that even if the agreement is valid, the class arbitration clause within the agreement is against public policy.  Plaintiffs rely on the New Jersey Supreme Court's decision in Muhammad v. County Bank of Rehoboth Beach, Delaware, as the basis for their claim.  In Muhammad, the plaintiff filed a class action against a bank for violation of the CFA.

Muhammad, 189 N.J. at 10.  He claimed that the bank charged illegal rates of interests.  Id. Muhammad was required to arbitrate his claim based upon his agreement with the bank and waived his right to bring a class action.  Id.  The Supreme Court held the class arbitration waiver was unconscionable.  Id. at 22.  The court reasoned that the amount of the claims would not add up to more than $600 per person even with treble damages under the CFA.  Id. at 21.  The court reasoned that it would be difficult to find competent counsel to represent an individual for such a small potential recovery.  Id.  In effect, by not allowing class arbitration, the bank was essentially denying Muhammad a chance to "pursue his statutory rights."  Id. at 22.  As a result, the court severed the class arbitration provision from the rest of the arbitration agreement.  Id. at 26.

The present case is distinguishable from Muhammad because the arbitration clause here would allow plaintiffs fully to pursue their statutory rights.  Plaintiffs argue incorrectly that the agreement bars the remedies afforded under CFA, and on that incorrect premise they contend that the class arbitration clause is against public policy.  But as noted above, CFA does apply to claims at issue here, and plaintiffs would be entitled to all their rights under CFA through the arbitration process.  In addition, class action waivers are not per se unconscionable.  Delta Funding, 189 N.J. at 46-47.  The Muhammad court invalidated the arbitration clause on the basis that it rendered the plaintiffs unable to exercise their statutory rights.  Muhammad, 189 N.J. at 21. The plaintiffs here, even acting individually, can attract competent counsel to vindicate their statutory rights.  They have claims of $17,388, $17,000, and $6,551.26.  (Amend. Compl. ¶¶ 8-10.)  If these claims are trebled, recovery under CFA could be $52,164, $51,000, and $19,653.78, respectively.  With the fee-shifting feature, the potential recoveries could attract competent counsel to represent the plaintiffs.  With competent counsel, plaintiffs have the same opportunities to present their case and recover for their claims individually as someone filing in

7

court.  The plaintiffs in Muhammad did not have this opportunity.  For these reasons, the court finds the class arbitration waiver is valid.

### C. The plaintiffs' claims fall under the arbitration agreement.

The agreement requires arbitration for "any and all statutory claims . . . that may arise between the students and [TCI]."  (Woolf Dec., Ex. A., p. 3 ¶ 1.)  These claims include "marketing of [TCI], admissions process, student enrollment in [TCI], the curriculum, the student's participation in any curriculum, and/or placement."  (Id.)  The agreement does exclude some claims, including TCI's "collection of tuition owed by the student pursuant to the Enrollment Agreement."  (Id.)

Plaintiffs argue their claims involve TCI's collection of tuition, but the very claims they are bringing are specifically covered in the arbitration agreement.  Plaintiffs' claims relate to the marketing of TCI, the promises made by staff during the admissions process, and the lack of placement.  The claims include misrepresentations TCI made about "job placement numbers, eligibility requirements and career services during their admissions process." (Amend. Compl. ¶ 3.)  The agreement specifically includes claims about "marketing of [TCI], the admissions process, . . . and/or placement."  (Woolf Decl., Ex. A, p.3, ¶ 1.)  If plaintiffs' reading of the clause were accepted, then any claim they bring would not be subject to arbitration because the plaintiffs pay tuition.  The Court finds the plaintiffs' claims are within the scope of the arbitration agreement.

Further, plaintiffs must arbitrate even though they have filed a class action law suit.  The agreement states that "any and all claims" must be brought through arbitration.  (Woolf Dec., Ex. A, p. 3 ¶ 1.)  Plaintiffs argue that the class action waiver only applies to an arbitration process but

8

not to actual law suits. However, under this logic, an individual student would be required to bring his claim to arbitration while a group of students could bring suit in court. This argument leads to an illogical result and is not in keeping with the plain meaning of the agreement. Accordingly, the class arbitration clause applies to the plaintiffs.

## CONCLUSION

For all of the foregoing reasons, defendants' motion to compel arbitration (Docket entry #15) is **granted**. Defendants' motion to stay the current action in its entirety until the final outcome of the arbitration (Docket entry #12) is also **granted**.

Dated: September 28, 2007                                          /s/Katharine S. Hayden

                                                                                 Katharine S. Hayden
                                                                                 United States District Judge